UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION**, <br><br> Plaintiff, <br><br> vs. <br><br> **HUGHE DUWAYNE GRAHAM**, an individual, **DONALD HOWARD**, an individual, and, **LARRY LOUIS MATYAS**, an individual, <br><br> Defendants. | Case No.: 1:20-cv-02505-PAB <br><br> Judge: Pamela A. Barker <br><br> Magistrate Judge: Thomas M. Parker |

**PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANTS HUGHE DUWAYNE GRAHAM AND DONALD HOWARD**

Pursuant to Federal Rule of Civil Procedure 55(b)(2), Plaintiff Securities and Exchange Commission (the "Commission") respectfully submits this Motion and Memorandum in Support of its Motion for Entry of Default Judgment against Defendants Hughe Duwayne Graham ("Graham") and Donald Howard ("Howard").  In support of its Motion, the Commission submits the following memorandum and the Declaration of Tracy S. Combs, a trial attorney for the Commission.

        Respectfully submitted,

        **SECURITIES AND EXCHANGE COMMISSION**

Dated: July 19, 2021    /s/ Tracy S. Combs
        Tracy S. Combs
        Casey R. Fronk
        351 South West Temple, Suite 6.100
        Salt Lake City, UT 84101-1950
        Tel: (801) 524-5796

## MEMORANDUM IN SUPPORT

## PROCEDURAL BACKGROUND

On November 6, 2020, the Commission filed a Complaint against defendants, including Hughe Duwayne Graham and Donald Lee Howard. (Dkt. No. 1.) The Commission's Complaint alleged that Graham and Howard (as well as a third defendant, Larry Louis Matyas[1]) violated Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(a)(1)]. (*See* Compl., Dkt. No. 1; *see also* Declaration of Tracy S. Combs, submitted herewith, ¶ 3.) In its Complaint, the Commission sought injunctive relief against Graham and Howard against future securities law violations, disgorgement of ill-gotten gains, prejudgment interest, and civil penalties. (Compl. pp. 7-8; Combs Decl. ¶ 3.)

On December 26, 2020 the Summons and Complaint were served on Donald Lee Howard and the return of service was filed with the Court on January 4, 2021. (Dkt. No. 5.) On January 13, 2021 the Summons and Complaint were served Defendant Hughe Duwayne Graham and the return of service was filed with the Court on January 14, 2021. (Dkt. No. 6.) Defendant Graham's answer or other responsive pleading was due on February 3, 2021. (*Id.*) On February 18, 2021, the Clerk of the Court entered a Default Certificate against Graham after he failed to answer the Complaint. (Dkt. No. 10.)

Subsequent to filing the Complaint and personal service on Donald Lee Howard, the Commission learned that Donald Lee Howard was not the "Don Howard" who engaged in unregistered broker activity alleged in the Complaint, and ascertained the identity of another

---

[1] Pursuant to a settlement with the Commission, the Court entered Final Judgment as to Defendant Matyas on December 11, 2020. (*See* Dkt. No. 4.)

2

individual named Donald Howard whom the Commission believed was the appropriate defendant. (*See* Dkt. Nos. 9, 13; Combs Decl. ¶ 4.) As a result, the Commission filed a motion to voluntarily dismiss Donald Lee Howard and to file an amended complaint substituting "Donald Howard" as a defendant, (Dkt. No. 14), which the Court granted on April 9, 2021. (Dkt. No. 15; Combs Decl. ¶ 4.) The Commission then filed its First Amended Complaint adding Donald Howard as an individual defendant on April 13, 2021. (Dkt. No. 16; Combs Decl. ¶ 4.)

On April 14, 2021, the Summons and First Amended Complaint were served on Defendant Donald Howard and the return of service was filed with the Court on April 19, 2021. (Dkt. Nos. 19-20.) Defendant Howard's Answer or other responsive pleading to the First Amended Complaint was due on May 5, 2021. (*Id*.) On April 15, 2021, Graham was served with the Summons and First Amended Complaint via United Parcel Service Next Day Air. (*See* Dkt. No. 21-1.) Defendant Graham's Answer or other responsive pleading was due on April 27, 2021. (*Id.*)

To date, neither Graham nor Howard have filed an answer to the Commission's April 13, 2021 First Amended Complaint nor reached out to the Commission staff in any way concerning this action. (Combs Decl. ¶ 5.) Neither Graham nor Howard have ever requested, and the Commission never agreed to, any extension of time for them to respond to the Commission's First Amended Complaint. (Combs Decl. ¶ 5.) On May 7, 2021, the Clerk of the Court entered Default Certificates against Graham and Howard after both defendants failed to answer the First Amended Complaint. (Dkt. Nos. 23-24; Combs Decl. ¶ 6.)

3

**ARGUMENT**

I.  **ENTRY OF DEFAULT JUDGMENT AS TO GRAHAM AND HOWARD IS APPROPRIATE.**

The Court should enter default judgment against Graham and Howard because they failed to answer or otherwise respond to the First Amended Complaint and the Clerk of this Court has already entered default against them.  *See* Default Certificates (Dkt. Nos. 23-24).  Federal Rule of Civil Procedure 55(b) permits entry of judgment by default by the Court against a defendant who has "failed to plead or otherwise defend" itself.  Upon the clerk's entry of default against a defendant, each well-pled allegation in the Complaint is taken as true for the purposes of establishing liability.  FED. R. CIV. P. 55(2); *see also Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (entry of default against a defendant conclusively establishes every factual predicate of a claim for relief); *J & J Sports Productions, Inc. v Rodriguez*, No. 1:08–CV–1350, 2008 WL 5083149, at *1 (N.D. Ohio Nov. 25, 2008) (after default has been entered, the well-pled factual allegations of the complaint generally are accepted as true).

II.  **THE WELL-PLEADED FACTS IN THE FIRST AMENDED COMPLAINT ESTABLISH THAT GRAHAM AND HOWARD VIOLATED SECTION 15(a)(1) OF THE EXCHANGE ACT.**

The well-pleaded facts in the First Amended Complaint in this matter establish that Graham and Howard violated Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act").  *See* First Amend. Compl. at ¶¶ 5, 15-28, 37-38, 40, 42-43 (Dkt. No. 16).  Section 15(a)(1) of the Exchange Act makes it "unlawful for any broker or dealer which is . . . to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is

4

registered [with the Commission]." *See* 15 U.S.C. §78o(a). To determine whether an individual qualifies as a broker, the courts consider, *inter alia*, whether the individual is a regular participant in securities transactions, received payment by commissions as opposed to salary, is involved in negotiations between the issuer and the investor, and makes valuations as to the merits of the investment or gives advice. *SEC v. George*, 426 F.3d 786, 792-97 (6th Cir. 2005); *SEC v. Integrity Fin. AZ, LLC*, No. 1:10 CV 782, 2012 WL 176228, at *5 (N.D. Ohio 2012); *SEC v. Hansen*, No. 83 Civ. 3692, 1984 WL 2413, at *10 (S.D.N.Y. Apr. 6, 1984). A violation of Section 15(a)(1) does not require a showing of scienter. *See, e.g., Integrity Fin. AZ, LLC*, 2012 WL 176228, at *5; *SEC v. Martino*, 255 F. Supp. 2d 268, 283 (S.D.N.Y. 2003).

As stated in the First Amended Complaint, neither Defendant Graham nor Howard were registered with the Commission as a broker or dealer, nor were they associated with a broker or dealer registered with the Commission. *See* First Amend. Compl. at ¶ 40. At various points between at least October 2017 and at least May 2019, Defendants Graham and Howard solicited investors to purchase the common stock equity securities of US Lighting Group, Inc. ("USLG"). Both Graham and Howard actively contacted prospective investors in USLG using email and/or telephone systems, solicited investors to purchase USLG securities, and were paid approximately 40% of investor proceeds as commissions for selling securities. *Id.* at ¶¶ 16-17, 20-28, 34-38. Accordingly, the First Amended Complaint establishes that Defendants Graham and Howard violated Section 15(a)(1) of the Exchange Act. *See Integrity Fin. AZ, LLC*, 2012 WL 176228, at *5.

### III. INJUNCTIVE AND MONETARY RELIEF IS APPROPRIATE.

#### A. Permanent Injunctive Relief

The Commission requests the Court to enter permanent injunctions against Graham and Howard enjoining them from future violations of Section 15(a)(1) of the Exchange Act. The Commission has the authority to seek injunctive relief as to future violations of the Exchange Act when it appears, upon proper showing, "that any person is engaged or is about to engage in acts or practices constituting a violation of any provision [of the Act]." 15 U.S.C. §78u(d)(1).

To obtain a permanent injunction, the Commission must establish that a violation has occurred and that there is a reasonable likelihood of future violations. *SEC v. Youmans*, 729 F.2d 413, 415 (6th Cir. 1984). In assessing whether there is a likelihood of future violations, the following factors are relevant: (1) the egregiousness of the violations; (2) the isolated or repeated nature of the violations; (3) the degree of scienter involved; (4) the sincerity of the defendant's assurances, if any, against future violations; (5) the defendant's recognition of the wrongful nature of his conduct; (6) the likelihood that the defendant's occupation will present opportunities (or lack thereof) for future violations; and (7) the defendant's age and health. *Youmans*, 729 F.2d at 415. The courts have noted that no one factor listed above is determinative. *Id.* (*citing SEC v. Wash. Cnty. Util. Dist.*, 676 F.2d 218, 227 (6th Cir.1982).

In this case, each of the *Youmans* factors weighs in favor of a permanent injunction. Graham's and Howard's violations of Section 15(a)(1) were egregious and repeated. At various points between at least October 2017 and May 2019, Graham and Howard solicited numerous

6

investors through calls and/or emails to purchase the common stock securities of USLG. Defendants instructed these investors as to how to purchase USLG securities, where to send their funds, and sent subscription agreements to interested parties. Based on their commission payments,[2] it is clear that Defendants raised hundreds of thousands of dollars in investments of USLG securities.

With respect to scienter, Graham and Howard knowingly violated, or at a minimum were reckless in disregarding, Section 15(a)(1)'s requirement that they register as brokers with the Commission before engaging in stock solicitation efforts on behalf of USLG. Both Graham and Howard worked as solicitors for USLG for roughly a year or more. In at least some of his solicitation activities, Defendant Graham used a pseudonym. Additionally, Defendant Graham may have recruited other individuals to work under him in soliciting investors to purchase USLG securities.

As evidenced by both Defendants' failures to file an answer to the First Amended Complaint or otherwise respond to this action in any way, Defendants have provided no acknowledgment of their misconduct nor any assurances that they will not continue to violate the securities laws unless enjoined from doing so. Defendant Graham is in his early 60s and Defendant Howard is in his 70s, and the Commission is unaware of any health issues. For the foregoing reasons, the Court should permanently enjoin Defendants Graham and Howard from future violations of Section 15(a)(1) of the Exchange Act.

---

[2] Defendants received approximately 40% of investor proceeds as commissions. First Amend. Compl. at ¶ 36. Defendant Graham's commissions totaled at least $443,127 and Defendant Howard received $118,800 in commission payments. *Id*. at ¶¶ 37-38.

### B. Disgorgement and Prejudgment Interest

The Commission requests the Court award disgorgement of Graham's and Howard's ill-gotten gains, along with pre-judgment interest. "A disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under [15 U.S.C.] § 78u(d)(5)." *Liu v. SEC*, 140 S. Ct. 1936, 1942 (2020); *see also* 15 U.S.C. §78u(d)(7) ("In any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement."). "The purpose of disgorgement is to force a defendant to give up the amount by which he was unjustly enriched rather than to compensate the victims of fraud." *SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985) (citing *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 102 (2d Cir.1978)).

In determining a proper disgorgement amount, the Commission need only produce a "reasonable approximation" of the defendant's ill-gotten gains. *SEC v. Zada*, 787 F.3d 375, 382 (6th Cir. 2015) (quotation omitted). "Once the SEC does so, the defendant bears the burden of proving that the SEC's estimate is unreasonable." *Id.*; *see also SEC v. Bravata*, 3 F. Supp. 3d 638, 661 (E.D. Mich. 2014) (citing *SEC v. First City Fin. Corp., Ltd.*, 890 F.2d 1215, 1231–32 (D.C.Cir.1989)). "All doubts concerning the determination of disgorgement are to be resolved against the defrauding party." *SEC v. Great Lakes Equities Co.*, 775 F. Supp. 211, 214 (E.D. Mich. 1991), *aff'd* 1993 U.S. App. LEXIS 29509 (6th Cir. 1993) (quotations omitted). Additionally, the Court "may add prejudgment interest to the disgorgement amount to avoid a defendant benefitting for the use of his ill-gotten gains interest free." *First City Fin. Corp.*, 890 F.2d 1215 at 1231.

8

Here, the Commission's evidence shows that Graham received net profits from his unregistered broker activities of at least $443,127 and Howard received net profits from his unregistered broker activities of at least $118,800, representing the amounts of commissions they received as compensation from USLG for soliciting investors. *See* Combs Decl. at ¶ 7. Defendants have not appeared in the case and have not contested the Commission's showing of their ill-gotten gains, which, consistent with *Liu*, reflects Defendants' "net profits" from their violations. *Liu*, 140 S.Ct. at 1940. Because these amounts were ill-gotten and causally connected to their illegal brokerage activity, a disgorgement remedy from Graham as to $443,127 and from Howard as to $118,800 is reasonable and appropriate in these circumstances.[3]

Prejudgment interest is appropriate on the foregoing disgorgement amounts based on the IRS underpayment rate of federal income tax as set forth in 26 U.S.C. § 6621(a)(2). *See, e.g., SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010); *Bravata*, 3 F. Supp. 638 at 662. Thus, in addition to disgorgement, it is appropriate for Graham to be required to pay prejudgment interest in the amount of $43,940.99, running from February 1, 2019 (starting the accrual after the last date of alleged commission payments to Graham from USLG and/or its affiliates) to May 7, 2021, the date of default. In addition to disgorgement, it is appropriate for Howard to be required to pay prejudgment interest in the amount of $14,142.05, running from October 1, 2018 (starting the accrual after the last date of alleged commission payments to Howard from USLG and/or its affiliates) to May 7, 2021, the date of default. *See* Combs. Decl.

---

[3] In the event disgorgement is ordered and collected, the Commission may seek an order from the Court to distribute the funds to injured investors.

¶ 8-10 and Exhibits 1 and 2 thereto. A summary of the requested amounts of disgorgement and prejudgment interest as to both Defendants is set forth below:

|  | **Disgorgement** | **Prejudgment Interest** | **Total** |
|---|---|---|---|
| Defendant Graham | $443,127 | $43,940.99 | $487,067.99 |
| Defendant Howard | $118,800 | $14,142.05 | $132,942.05 |

### C. Civil Penalties

Finally, as part of the default judgment, the Commission requests that the Court impose civil penalties to deter Graham, Howard, and others from future violations of the securities laws. Section 21(d)(3) of the Exchange Act provides that the Commission may seek, and the Court may impose, civil monetary penalties for violations of the Exchange Act. 15 U.S.C. § 78u(d)(3). The Exchange Act provides for three tiers of penalties, and the amount of a penalty is to be "determined by the court in light of the facts and circumstances." 15 U.S.C. § 78u(d)(3)(B). First tier penalties may be imposed for any violation of the Act. *See id*. § 78u(d)(3)(B)(i). Second tier penalties apply to violations that "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." *Id*. § 78u(d)(3)(B)(ii). Third tier penalties apply to violations that (i) involve "fraud, deceit, manipulation, or reckless disregard of a regulatory requirement" and (ii) "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." *Id*. § 78u(d)(3)(B)(iii).

The specific amount of the civil penalty imposed within each statutory penalty tier is discretionary. *See SEC v. Moran*, 944 F. Supp. 286, 296–97 (S.D.N.Y. 1996). Each tier provides that a penalty cannot exceed the greater of either a specific statutory amount, or "the gross amount of pecuniary gain to such defendant as the result of the violation." 15 U.S.C. § 78u(d)(3)(B). For third-tier penalties involving violations that occurred after November 2, 2015,

and are imposed after January 15, 2021, the statutory amount adjusted for inflation is $195,047 for natural persons.  *See* Release No. 34-90874, dated January 8, 2021 (effective January 15, 2021).  For second-tier penalties involving violations that occurred after November 2, 2015, and are imposed after January 15, 2021, the statutory amount adjusted for inflation is $97,523 for natural persons.  *Id*.  For first-tier penalties involving violations that occurred after November 2, 2015, and are imposed after January 15, 2021, the statutory amount adjusted for inflation is $9,753 for natural persons.  *Id*.

Here, a third-tier civil penalty in an amount to be determined by the Court is warranted as to both Graham and Howard.[4]  *See id*. § 78u(d)(3)(B)(ii).  As previously discussed, both Graham and Howard recklessly disregarded the statutory and regulatory requirement to register with the Commission as a broker, and continued to violate that requirement for roughly a year or more, during which Defendants solicited numerous investors, creating a risk of substantial loss for those who invested.  A substantial penalty would serve a deterrent function as to Graham and

---

[4]  Other district courts have awarded substantial penalties in Commission cases involving default judgments.  *See, e.g., SEC v. Lowrance*, 2012 WL 2599127, at *7 (N.D. Cal. July 5, 2012) (awarding the "maximum penalties," exceeding $200,000,000 between two defendants); *SEC v. One or More Unknown Traders in the Common Stock of Certain Issuers*, 825 F. Supp. 2d 26, 34 (D.D.C. 2010) (awarding civil penalties equal to the pecuniary gain); *SEC v. Locke Capital Mgmt., Inc.*, 726 F. Supp. 2d 105, 109 (D.R.I. 2010) (awarding civil penalties "equal to three times the disgorgement it owes"); *SEC v. Wynne*, 2010 WL 2898981, at *2 (E.D. Pa. July 20, 2010) (awarding the "maximum statutory penalty"); *SEC v. Becker*, 2010 WL 2165083, at *4 (S.D.N.Y. May 28, 2010) (awarding a third-tier penalty when a defendant defrauded 29 investors out of $1.3 million); *SEC v. Anticevic*, 2010 WL 2077196, at *8 (S.D.N.Y. May 10, 2010) (awarding a penalty of more than $20 million, an amount equal to "three times the total profits"); *SEC v. Great American Tech., Inc.*, 2010 WL 1416121, at *2 (S.D.N.Y. Apr. 8, 2010) (awarding a third-tier civil penalty "equal to the scheme's pecuniary gain: $2,319,160"); *SEC v. Pitters*, 2010 WL 1413194, at *6 (S.D. Fla. Mar. 5, 2010) (awarding the "maximum civil penalty allowable for Third Tier violations"); *SEC v. Aimsi Tech., Inc.*, 650 F. Supp. 2d 296, 309 (S.D.N.Y. 2009) (awarding a third-tier penalty).

Howard, who have offered no assurances against future violations and remain at risk of potential future violations. *See, e.g., SEC v. Souza*, 2011 WL 2181365, at *3 (E.D. Cal. June 3, 2011) (imposing penalty by default judgment motion, "in order to adequately serve the deterrent function of the civil penalty provision"). Accordingly, a third-tier penalty would be appropriate in this matter.

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court grant its Motion for Entry of Default Judgment and enter default judgments against Defendants Graham and Howard. Proposed default judgments for each Defendant are attached for the convenience of the Court.

DATED this 19th day of July, 2021.

Respectfully submitted,

**SECURITIES AND EXCHANGE COMMISSION**

Tracy S. Combs (California State Bar No. 298664)
combst@sec.gov
Casey R. Fronk (Illinois State Bar No. 6296535)
FronkC@sec.gov

COUNSEL FOR PLAINTIFF
Securities and Exchange Commission
351 South West Temple, Suite 6.100
Salt Lake City, UT 84101-1950
Tel: (801) 524-5796
Fax: (801) 524-3558

Case: 1:20-cv-02505-PAB  Doc #: 26  Filed:  07/19/21  13 of 13.  PageID #: 140

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2021 I caused a true and correct copy of the foregoing **PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTRY OF DEFAULT JUDGMENTS AGAINST DEFENDANTS HUGHE DUWAYNE GRAHAM AND DONALD HOWARD** and its supporting exhibits to be served by U.S. Mail first-class delivery on the following:

Hughe Duwayne Graham
█████████████████
Riverside, CA █████

Donald Howard
█████████████████
North Las Vegas, NV █████

                                           /s/ Tracy S. Combs
                                           Tracy S. Combs