IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **CASE NO. 1:20-CV-02505-PAB** |
| Plaintiff, | **JUDGE PAMELA A. BARKER** |
| -vs- | |
| **HUGHE DUWAYNE GRAHAM, et al.,** | **AMENDED MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

This matter comes before the Court upon Plaintiff Securities and Exchange Commission's Motion for Default Judgment Against Defendants Hughe Duwayne Graham and Donald Howard ("Motion for Default Judgment") filed on July 19, 2021. (Doc. No. 26.) Defendants failed to respond to either the initial Complaint or First Amended Complaint that was served upon them, or otherwise appear in this case. *See* Declaration of Tracy S. Combs (Doc. No. 26-1 at ¶ 5.) As a result, Plaintiff moved for an entry of default against Defendants, which the Clerk of Court entered on May 7, 2021. (Doc. Nos. 23, 24.) Defendants have not responded to Plaintiff's Motion for Default Judgment. For the reasons set forth below, Plaintiff's Motion for Default Judgment is GRANTED.

I. **Background**

    A.    **Factual Background**

On April 13, 2021, Plaintiff Securities and Exchange Commission (the "Commission") filed a First Amended Complaint (Doc. No. 16) against Defendants Hughe Duwayne Graham ("Graham") and Donald Howard ("Howard") (collectively, "Defendants") seeking injunctive relief and civil

monetary penalties for violations of Section 15(a)(1) of the Securities and Exchange Act of 1934 ("Exchange Act").[1] 15 U.S.C. § 78o(a)(1), *et seq.* (*See* Doc. No. 16 at PageID# 99-100.)

In late 2017, US Lighting Group, Inc. ("USLG"), a company involved in designing and manufacturing LED lighting, "initiated an offering of its common stock and engaged various individuals to solicit prospective investors to purchase it." (*Id.* at ¶¶ 14-15.) Defendants were among those recruited to solicit the USLG securities. (*Id.* at ¶ 15.) Between October 2017 and May 2019 (the "Relevant Period"), Defendants "solicited investors to purchase the common stock equity securities" of USLG. (*Id.* at ¶ 1.) As part of Defendants' efforts, they called or emailed prospective investors, promoted an investment in USLG, informed investors as to how to purchase securities and where to send their funds, and sent subscription agreements to interested prospects. (*Id.* at ¶¶ 2, 16.)

For example, Graham performed some solicitation activities using the alias "John Morgan" and was able to attract an investor identified as "T.H." to wire $20,000 to USLG for purchasing securities. (*Id.* at ¶¶ 17-23.) Similarly, Howard solicited investors, including one "J.I.," who purchased 40,000 shares of USLG for $10,000. (*Id.* at ¶¶ 24-28.) While Defendants were engaged in this conduct, they "were neither registered with the Commission as brokers or dealers nor associated with a broker or dealer registered with the Commission." (*Id.* at ¶ 4.)

"Defendants regularly submitted invoices for their work to USLG for payment." (*Id.* at ¶ 34.) The Commission alleges that although the invoices "did not specifically include line items for commissions arising from their investor solicitation activities," former USLG employees acknowledged the activities listed on Defendants' invoices "were mere obfuscation" and that the

---

[1] The First Amended Complaint also named a third Defendant, Larry Louis Matyas ("Matyas"). Matyas was also a named Defendant in the Commission's initial Complaint filed on November 6, 2020. (Doc. No. 1.) Pursuant to his settlement with the Commission (Doc. No. 3), the Court entered Final Judgment as to Matyas on December 11, 2020. (Doc. No. 4.) Thus, Defendants Graham and Howard are the only remaining Defendants in this action.

2

"invoiced amounts were purely commission payments for Defendants' investor solicitation activities." (*Id.* at ¶¶ 34-35.)

As compensation for their securities solicitation work, Defendants "received approximately 40% of investor proceeds as commissions," with Graham having received commissions "of at least $443,127" and Howard having received commissions "of at least $118,800." (*Id.* at ¶¶ 3, 36-38.) By engaging in this conduct, Defendants are alleged to have violated the Exchange Act. (*Id.* at ¶ 5; *see also* 15 U.S.C. § 78o(a)(1).)

**B.     Procedural Background**

The Commission filed its initial Complaint on November 6, 2020. (Doc. No. 1.) Personal service of the summons and initial Complaint was executed upon "Donald Lee Howard" on December 26, 2020 (Doc. No. 5) and upon Graham on January 13, 2021. (Doc. No. 6.) On February 18, 2021, the Clerk entered default against Defendant Graham. (Doc. No. 10.) On April 8, 2021, the Commission moved the Court for leave to amend its Complaint and voluntarily dismiss the erroneously named Defendant "Donald Lee Howard," and rename the intended Defendant "Donald Howard." (*See* Doc. No. 14.) The Court granted leave to amend (Doc. No. 15) and the Commission filed the operative First Amended Complaint on April 13, 2021. (Doc. No. 16.)

Howard was served with a copy of the summons and First Amended Complaint via personal service on April 14, 2021. (Doc. No. 19.) Graham was served with a copy of the summons and First Amended Complaint via UPS mail delivery on April 15, 2021. (Doc. No. 21-1 at ¶ 8; Ex. A at PageID# 119.) Neither Defendant timely filed an answer or otherwise responded to the summons and First Amended Complaint. (*See* Doc. No. 26-1 at ¶ 5.)

On May 4, 2021, the Commission filed a Second Application for Entry of Default against Graham (Doc. No. 21), and two days later, filed an Application for Entry of Default against Howard. (Doc. No. 22.) The Clerk entered default against both Defendants on May 7, 2021. (Doc. Nos. 23, 24.) The Commission filed the instant Motion for Default Judgment on July 19, 2021. (Doc. No. 26.) Defendants did not respond to either the entries of default or the instant Motion. Nor did Graham, Howard, or any person purporting to represent them contact the Commission from the time the action was filed to the time the Commission filed its Motion for Default Judgment. (Doc. No. 26-1 at ¶ 5.)

Pursuant to its First Amended Complaint and Motion for Default Judgment, the Commission now seeks a default judgment against Graham and Howard for (1) permanent injunctive relief enjoining them from future violations of Section 15(a)(1) of the Exchange Act and from "directly or indirectly, including, but not limited to, through any entity owned or controlled by each Defendant, soliciting any person or entity to purchase or sell any security" (Doc. No. 16 at PageID# 100; and (2) civil monetary penalties pursuant to 15 U.S.C. § 78u(d)(3) in amounts to be determined by the Court, with the Commission arguing that third-tier civil penalties are warranted.

## II. Standard of Review

Applications for default judgment are governed by Fed. R. Civ. P. 55(b)(2). Under Rule 55, the clerk must enter default against a party who fails to plead or otherwise defend against a judgment for affirmative relief. Fed. R. Civ. P. 55(a). After the clerk enters default, the party seeking relief may apply to the court for a default judgment. Fed. R. Civ. P. 55(b).

Once default is entered against a defendant, that party "is deemed to have admitted all of the well pleaded allegations in the Complaint." *Poskovic v. D2 Mgmt., LLC*, No. 5:19-cv-1222, 2019

WL 6727098, at *1 (N.D. Ohio Dec. 11, 2019). While the factual allegations are taken as true, the court is still "required to 'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Id.* (quoting *Gilden v. Platinum Holdings Grp.*, LLC, No. 1:18-cv-343, 2019 WL 590745, at *2 (S.D. Ohio Feb. 13, 2019)).

**III.    Analysis**

Upon review of the record in this case, the Court finds that default judgment is warranted. Defendants' failure to respond to the First Amended Complaint, entry of default, or Motion for Default Judgment has made it clear that Defendants have no intention of defending this action. The Court accepts the allegations set forth in the First Amended Complaint as true and, therefore, finds that Defendant violated Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1), *et seq.*

The well-pleaded facts in the First Amended Complaint are that Graham and Howard violated Section 15(a)(1) of the Exchange Act. Section 15(a)(1) sets forth in part:

> It shall be unlawful for any broker or dealer . . . to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered [with the Commission].

15 U.S.C. § 78o(a)(1). A "broker" is "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(4)(A). To determine whether an individual qualifies as a broker, the courts consider several factors, "including regular participation in securities transactions, employment with the issuer of the securities, payment by commission as opposed to salary, history of selling the securities of other issuers, involvement in advice to investors and active recruitment of investors." *SEC v. George*, 426 F.3d 786, 797 (6th Cir. 2005); *see also SEC v. Integrity Fin. AZ, LLC*, No. 1:10-cv-782, 2012 WL 176228, at *5 (N.D. Ohio Jan. 20, 2012). A violation of

5

Section 15(a)(1) does not require a showing of scienter. *See, e.g.*, *Integrity Fin. AZ*, 2012 WL 176228, at *5.

Here, neither Graham nor Howard registered as a broker or dealer with the Commission, nor were they associated with a registered broker or dealer. (Doc. No. 16 at ¶¶ 4, 40.) Defendants meet several of the factors for determining whether someone is a broker. *See George*, 426 F.3d at 797. At various points during the Relevant Period, Graham and Howard solicited investors to purchase USLG securities. (*Id.* at ¶ 2.) Both Defendants actively "contacted prospective investors via telephone or email to promote an investment in USLG securities." (*Id.* at ¶¶ 16, 17-28.) Defendants also "regularly submitted invoices for their work to USLG for payment" and USLG employees acknowledged that the "invoiced amounts were purely commission payments for Defendants' investor solicitation activities." (*Id.* at ¶ 34.) "Defendants received commissions of approximately 40% of investor proceeds . . . as compensation for their securities solicitation work." (*Id.* at ¶ 36.) Thus, Graham and Howard violated Section 15(a)(1) of the Exchange Act by acting as brokers effecting transactions in securities while not being registered as a broker or dealer with the Commission.

Having established liability, the Court must now determine the extent of the injunctive relief and damages.

### A. Permanent Injunctive Relief

The Commission requests that the Court permanently enjoin Graham and Howard from future violations of Section 15(a)(1) of the Exchange Act and from "directly or indirectly, including, but not limited to, through any entity owned or controlled by each Defendant, soliciting any person or entity to purchase or sell any security." (Doc. No. 16 at PageID# 100; Doc. No. 26 at PageID# 133.) Under

6

15 U.S.C. § 78u(d)(1), the Commission has the authority to seek injunctive relief against future violations when it appears upon a proper showing "that any person is engaged or is about to engage in acts or practices constituting a violation of any provision [of the Act]."

The Court finds that a permanent injunction enjoining Graham and Howard is warranted. To obtain a permanent injunction, the Commission must aver that a violation has occurred and that there is a reasonable likelihood of future violations. According to the Sixth Circuit, the following factors "are relevant in determining the likelihood of future violations" and "no one factor is determinative":

> [1] the egregiousness of the violations, [2] the isolated or repeated nature of the violations, [3] the degree of scienter involved, [4] the sincerity of the defendant's assurances, if any, against future violations, [5] the defendant's recognition of the wrongful nature of his conduct, [6] the likelihood that the defendant's occupation will present opportunities (or lack thereof) for future violations, and [7] the defendant's age and health.

*SEC v. Youmans*, 729 F.2d 413, 415 (6th Cir. 1984); *see also SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 332 (6th Cir. 2013) (applying the *Youmans* factors).

The Court finds that the *Youmans* factors weigh in favor of a permanent injunction enjoining Graham and Howard from future violations of Section 15(a)(1) of the Exchange Act and from soliciting any person or entity to purchase or sell any security through any entity owned or controlled by each Defendant. (Doc. No. 16 at PageID# 100.) As to the first and second factors, the Court finds that Graham and Howard's investor solicitations were egregious and repeated. Graham called prospective investors and encouraged them to purchase USLG securities, receiving commissions of at least $443,127 during the Relevant Period. (Doc. No. 16 at ¶¶ 17, 37.) Howard also called prospective investors, pitched USLG securities, provided investors with subscription agreements, and instructed investors as to how to purchase the securities, receiving commissions of at least $118,800 during the Relevant Period. (*Id.* at ¶¶ 25, 38.) The Court finds that the third factor, scienter, also

weighs in favor of a permanent injunction. Graham and Howard knowingly violated, or were at least reckless in disregarding, Section 15(a)(1)'s registration requirement while they solicited stocks on USLG's behalf. "Defendants were neither registered with the Commission as brokers or dealers nor associated with a broker or dealer registered with the Commission," yet were soliciting investments. (*Id.* at ¶¶ 4, 40.) Graham also used the pseudonym "John Morgan" on occasion and may have recruited other individuals to work under him in the securities solicitations. (*Id.* at ¶¶ 18-19; Doc. No. 26 at PageID# 134.) Further, "Defendants regularly submitted invoices for their work to USLG for payment. Though the invoices did not specifically include line items for commissions arising from their investor solicitation activities," USLG employees "acknowledged that the various activities listed on the invoices were mere obfuscation and the invoiced amounts were purely commission payments for Defendants' investor solicitation activities." (Doc. No. 16 at ¶¶ 34-35.) USLG CEO Paul Spivak also indicated that on these invoices lacking line-item amounts for Defendants' commission payments, "commissions were understood by [him] to be part of what was being invoiced." (*Id.* at ¶ 35.) The fourth and fifth *Youmans* factors further weigh in favor of a permanent injunction. As Graham and Howard have not responded to this lawsuit in any way, they have given no assurances that they will not violate the law in the future and have not acknowledged the wrongfulness of their conduct. (Doc. No. 26 at PageID# 134.) The sixth factor is met in that Graham's and Howard's involvement in the securities solicitation trade will provide opportunities for future violations. Graham also "sometimes operates through HDG Global Marketing, LLC, an entity he is believed to own and control." (Doc. No. 16 at ¶ 11.) As to the seventh factor regarding age and health, the Commission represents that Graham is in his early 60s and Howard is in his 70s and that the Commission is unaware if Defendants have any health issues. (Doc. No. 16 at ¶¶ 11-12; Doc.

No. 26 at PageID# 134.) The Court finds that this factor neither weighs in favor of nor against a permanent injunction.

The Court finds that the above factors weigh in favor of entering a permanent injunction against Graham and Howard. Accordingly, it is ordered that Defendants Hughe Duwayne Graham and Donald Howard are permanently restrained and enjoined from violating, directly or indirectly, Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)] by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, to effect transactions in, or induce or attempt to induce the purchase or sale of, securities while not registered with the Commission as a broker or dealer or while not associated with an entity registered with the Commission as a broker or dealer.

Furthermore, under Fed. R. Civ. P. 65(d)(2)(B)-(C), this injunction also binds the following who receive actual notice of this Judgment by personal service or otherwise: (B) Defendants' officers, agents, servants, employees, and attorneys; and (C) other persons in active concert or participation with Defendants or the parties.

### B. Civil Monetary Penalties

The Commission also requests that the Court impose civil penalties to deter Graham, Howard, and others from future violations of the securities laws. (Doc. No. 26 at PageID# 137.) The Commission seeks so-called "third-tier" civil penalties to be entered against Graham and Howard. (*Id.* at PageID# 138.) However, the Court finds that "second-tier" civil penalties against Graham and Howard are appropriate for their violations of the Exchange Act as alleged in the First Amended Complaint.

"[T]he purpose of civil money penalties is to serve as a deterrent against future misconduct." *Integrity Fin. AZ*, 2012 WL 176228, at *8 (citation omitted). Under the Exchange Act, there are three tiers of civil penalties that the Court may impose. *See* 15 U.S.C. § 78u(d)(3)(B)(i)-(iii). "The amount of a civil penalty imposed . . . shall be determined by the court in light of the facts and circumstances." *Id.* at § 78u(d)(3)(B)(i). First-tier penalties may be imposed for any violation of the Act. *See id.* Second-tier penalties apply to violations that "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." *Id.* at § 78u(d)(3)(B)(ii). Third-tier penalties are assessed when a violation (1) "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement"; and (2) the violation "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." *Id.* at § 78u(d)(3)(B)(iii). Though the penalty amounts differ as to each tier, the penalty cannot exceed the greater of either a specific statutory amount, or "the gross amount of pecuniary gain to such defendant as a result of the violation." *Id.* at § 78u(d)(3)(B). When determining the amount of a civil monetary penalty, a court should consider the following factors:

> (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

*Integrity Fin. AZ*, 2012 WL 176228, at *8 (quoting *SEC v. Forest Res. Mgmt. Corp.*, No. 09 Civ. 0903, 2010 WL 2077202, at *2 (S.D.N.Y. May 18, 2010)); .

Here, the Court finds that the factors weigh in favor of imposing second-tier penalties against Graham and Howard. As discussed *supra*, the Court accepts the Commission's allegations as true. The first and second factors regarding egregiousness and scienter meet the requirement for a second-

tier penalty in that Graham and Howard contacted prospective investors to promote USLG securities over the Relevant Period and Graham even performed some of his activities using a pseudonym. (Doc. No. 16 at ¶¶ 17-19, 24-25.)  Defendants' scienter constituted at least a reckless disregard of the regulatory requirement to register as brokers with the Commission, because over the Relevant Period, neither Graham nor Howard was registered as a broker or dealer, yet "regularly submitted invoices for their work to USLG for payment" and such invoices sought to obscure their commissions for solicitation.  (*Id.* at ¶¶ 4, 34.)  Although these invoices

> did not specifically include line items for commissions arising from their investor solicitation activities, former USLG CFO Susan Tubbs and former USLG finance employee Laura Loesch, each acknowledged that the various activities listed on the invoices were mere obfuscation and the invoiced amounts were purely commission payments for Defendants' investor solicitation activities.

(*Id.* at ¶ 34.) Moreover, USLG CEO Paul Spivak indicated that despite the invoices not specifically including line items for Defendants' commissions on their investor solicitation activities, "such commissions were understood by Spivak to be part of what was being invoiced." (*Id.* at ¶ 35.)  Thus, Defendants were regularly submitting invoices while unregistered as brokers and obscured their invoiced commission payments associated with their solicitation activities.  This activity involved the requisite "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" for imposing second-tier penalties under 15 U.S.C. § 78u(d)(3)(B)(ii).

As to the third factor, the Court does not find that the Commission has sufficiently alleged that Graham's and Howard's conduct created substantial losses or the risk of such loss to others to warrant the third-tier penalties the Commission seeks.  The allegations in the First Amended Complaint are deemed true and therefore Graham solicited investor "T.H." to wire $20,000 to purchase USLG securities, telling "T.H." that "he could purchase shares . . . at a discount and then

11

sell the shares at the then prevailing market price six months" later. (Doc. No. 16 at ¶ 21.) Similarly, based on Howard's representations that "J.I." could purchase USLG shares at a discount price of half the then-prevailing market price," investor "J.I." wired $10,000 to USLG. (*Id.* at ¶ 27.) However, the Commission has not alleged whether these purchases resulted in substantial losses to the investors. (*See id.* at ¶¶ 23, 28.) Thus, it is unclear from the allegations whether the investments that Defendants solicited resulted in substantial losses to the investors or posed such a risk in order to meet the second prong in § 78u(d)(3)(B)(iii) that would warrant third-tier penalties. In many of the cases the Commission cites, where substantial penalties were levied against defaulted defendants (*see* Doc. No. 26 at PageID# 138 n. 4), the defendants' behavior involved high levels of intentionality, fraud, and egregiousness. The Court notes that all of the district court cases the Commission cites are from outside the Sixth Circuit. (*See id.*) Further, the Court finds the facts in those cases where heavier penalties were imposed to be more egregious than the facts in the case at bar.[2] The Court does not find the facts as set forth in the case *sub judice* to be so flagrant as to warrant imposition of third-tier penalties.

The fourth factor as to whether Defendants' conduct was isolated or recurrent weighs in favor of second-tier penalties, as Graham and Howard solicited investors from October 2017 to May 2019, further indicating a reckless disregard of the regulatory requirement to register as a broker while regularly submitting invoices for their work to USLG for payment. (*Id.* at ¶¶ 1, 4, 34.) Defendants

---

[2] Moreover, in cases from courts within the Sixth Circuit where courts have imposed third-tier penalties on default judgment for violations of securities laws, the facts were more egregious than the case at bar. *See, e.g.*, *SEC v. Kilpatrick*, No. 12-12109, 2014 WL 3767801, at *7 (E.D. Mich. July 31, 2014) (granting default judgment and imposing third-tier civil penalties where defendants' violations included "material omissions, solicitation of personal gifts, and failure to disclose conflicts of interest, creat[ing] a risk of potentially devastating loss to pensioners."); *SEC v. Romer*, No. 2:18-cv-12927, 2019 WL 3219906, at *5 (E.D. Mich. July 17, 2019) (granting default judgment and dismissing civil penalties due to defendant's prison sentence, but finding third-tier penalties would have been warranted because defendant's conduct "involved substantial fraud, deceit, and manipulation, and also resulted in substantial losses for [d]efendant's former customers—many of whom lost their life savings.").

12

submitted invoices during this time that did not specifically include line items for commissions, yet USLG employees knew this to be "mere obfuscation" and that the "invoiced amounts were purely commission payments." (*Id.* at ¶ 34.)  Lastly, the Court does not find the fifth factor to weigh in favor of a reduced penalty.  A mere contention of inability to pay is insufficient to overcome the imposition of an appropriate penalty.  *Integrity Fin. AZ*, 2012 WL 176228, at *10 (citation omitted).  Here, as Graham and Howard are in default, they have not contended they have the inability to pay.

Accordingly, the Court will impose second-tier civil penalties against Graham and Howard under 15 U.S.C. § 78u(d)(3)(B)(ii) in the amounts adjusted for inflation, as set forth in SEC Release No. 34-90874.  For second-tier penalties involving violations that occurred after November 2, 2015, and which are imposed after January 15, 2021, the statutory amount adjusted for inflation is $97,523 for natural persons.  (*See* SEC Release No. 34-90874, Adjustments to Civil Monetary Penalty Amounts (Jan. 8, 2021); *see also* Doc. No. 26 at PageID# 137-38.)  The Court therefore imposes a civil penalty in the amount of $97,523 against Graham and a civil penalty in the amount of $97,523 against Howard.

## IV. Conclusion

Plaintiff's Motion for Default Judgment is GRANTED.  Default judgment is entered in Plaintiff's favor against Defendants in the following amounts for Defendants' violations of the Exchange Act:

    a. <u>Permanent Injunctive Relief</u>: Defendants Hughe Duwayne Graham and Donald Howard are permanently restrained and enjoined from violating, directly or indirectly, Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)] by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any

>> national securities exchange, to effect transactions in, or induce or attempt to induce the purchase or sale of, securities while not registered with the Commission as a broker or dealer or while not associated with an entity registered with the Commission as a broker or dealer.
>
> b. <u>Civil Monetary Penalties</u>: Defendant Hughe Duwayne Graham is ordered to pay a civil monetary penalty of $97,523.00. Defendant Donald Howard is ordered to pay a civil monetary penalty of $97,523.00.

Defendants Hughe Duwayne Graham and Donald Howard shall satisfy these obligations by paying their respective amounts of civil penalty to the Securities and Exchange Commission within 30 days after entry of this Final Judgment.

Defendants may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Defendants may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to:

> Enterprise Services Center
> Accounts Receivable Branch
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Hughe Duwayne Graham and Donald Howard as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment.

Defendants shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment,

Defendants relinquish all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendants.

The Commission shall hold the funds (collectively, the "Fund") until further order of this Court.  The SEC may propose a plan to distribute the Fund subject to the Court's approval, and the Court shall retain jurisdiction over the administration of any distribution of the Fund.

The Commission may enforce the Court's judgment for penalties by the use of all collection procedures authorized by law, including the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 *et seq.*, and moving for civil contempt for the violation of any Court orders issued in this action. Defendants shall pay post judgment interest on any amounts due after 30 days of the entry of this Final Judgment pursuant to 28 U.S.C. § 1961.  The Commission shall hold the funds, together with any interest and income earned thereon (collectively, the "Fund"), pending further order of the Court.

The Commission may propose a plan to distribute the Fund subject to the Court's approval. Such a plan may provide that the Fund shall be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002.  The Court shall retain jurisdiction over the administration of any distribution of the Fund and the Fund may only be disbursed pursuant to an Order of the Court.

Regardless of whether any such Fair Fund distribution is made, amounts ordered to be paid as civil penalties pursuant to this Judgment shall be treated as penalties paid to the government for all purposes, including all tax purposes.  To preserve the deterrent effect of the civil penalty, Defendants shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action, argue that they are entitled to, nor shall they further benefit by, offset or reduction of such compensatory damages award by the amount of any part of Defendants' payment of a civil

penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Defendants shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this Judgment. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Defendants by or on behalf of one or more investors based on substantially the same facts as alleged in the Complaint in this action.

It is hereby further ordered, adjudged, and decreed that, solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the allegations in the complaint are true and admitted by Defendants, and further, any debt for civil penalty or other amounts due by Defendants under this Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendants of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19).

This Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

**IT IS SO ORDERED.**

     *s/Pamela A. Barker*
     PAMELA A. BARKER
Date: November 12, 2021     U.S. DISTRICT JUDGE